UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

===========================================

MARCUS C. ANDERSON,

                          Plaintiff,                          **Decision and Order**

          v.                                                                  19-CV-464-HBS
                                                                                  (Consent)

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.

===========================================

## I.    INTRODUCTION

The parties have consented to this Court's jurisdiction under 28 U.S.C. § 636(c).  The

Court has reviewed the Certified Administrative Record in this case (Dkt. No. 6, cited hereafter

as "Tr."), and familiarity is presumed.  This case comes before the Court on cross-motions for

judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  Dkt. Nos.

8, 11.  Plaintiff Marcus C. Anderson challenges the final decision of the Commissioner of Social

Security (the "Commissioner") that he is not entitled to Supplemental Security Income under

Title XVI of the Social Security Act.  The Court has deemed the motions submitted on the

papers under Rule 78(b).

## II.    LEGAL STANDARD

"The scope of review of a disability determination . . . involves two levels of inquiry.  We

must first decide whether [the Commissioner] applied the correct legal principles in making the

determination.  We must then decide whether the determination is supported by substantial

evidence." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) (internal quotation marks and

citations omitted).  When a district court reviews a denial of benefits, the Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive.  42 U.S.C. § 405(g).

"The phrase 'substantial evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding.  Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations.  And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is 'more than a mere scintilla.'"  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation and editorial marks and citations omitted).  It means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*; *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).

The substantial evidence standard applies to both findings on basic evidentiary facts and to inferences and conclusions drawn from the facts.  *Stupakevich v. Chater*, 907 F. Supp. 632, 637 (E.D.N.Y. 1995); *Smith v. Shalala*, 856 F. Supp. 118, 121 (E.D.N.Y. 1994).  When reviewing the Commissioner's decision, the court must determine whether "the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner.  *Winkelsas v. Apfel*, No. 99-CV-0098H, 2000 WL 575513, at *2 (W.D.N.Y. Feb. 14, 2000).  In assessing the substantiality of evidence, the Court must consider evidence that detracts from the Commissioner's decision, as well as evidence that supports it.  *Briggs v. Callahan*, 139 F.3d 606, 608 (8th Cir. 1998).  The Court may not reverse the Commissioner

merely because substantial evidence would have supported the opposite conclusion. *Id.* "The substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise.*" *Brault v. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citations omitted).

For purposes of Social Security disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §§ 423(d) (2)(A) & 1382c(a)(3)(B).

Plaintiff bears the initial burden of showing that the claimed impairments will prevent a return to any previous type of employment. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." *Id.*; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1551 (2d Cir. 1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

3

To determine whether any plaintiff is suffering from a disability, the Administrative Law Judge ("ALJ") must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; *Berry*, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, then the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, the ALJ has an affirmative duty to develop the record. *Gold v. Secretary*, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a plaintiff from performing past work, the ALJ is required to determine the plaintiff's residual functional capacity ("RFC") and the physical and mental demands of the work done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). The ALJ must then determine the individual's ability to return to past relevant work given the RFC. *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994).

## III. DISCUSSION

Anderson primarily argues that the ALJ erroneously used her lay judgment—rather than competent medical opinion—to account for his Marfan's syndrome in the RFC. Because the

4

Court agrees, it need not address Anderson's other arguments on appeal.

The ALJ found that Anderson has severe impairments of asthma and Marfan's syndrome.  Tr. 25.  The latter impairment is "an inherited disorder that affects the connective tissue" that support and anchor "[the] structures in [one's body]."  *Van Banh v. Colvin*, No. 14-CV-3122, 2015 WL 5020670, at *1 n.1 (C.D. Cal. Aug. 24, 2015).  "People with Marfan syndrome are usually tall and thin with disproportionately long arms, legs, fingers and toes.  The damage caused by [the disorder] can be mild or severe."  *Id.*  The disorder can also cause abnormalities in the heart and blood vessels, resulting in heart murmurs, shortness of breath, fatigue, and palpitations.  *Johnson v. Astrue*, No. 11-CV-50278, 2013 WL 4759594, at *12 (N.D. Ill. Sept. 4, 2013).  In severe cases, it can weaken and stretch the "wall of the aorta," causing tears and ruptures.  *Id.*

The ALJ concluded that, despite these impairments, Anderson could perform light work with additional restrictions:  Due to his Marfan's syndrome and the pain resulting therefrom, Anderson could only occasionally perform postural activities and would be off task between 1 and 10% of the workday.  Tr. 29, 34.  Due to his asthma, Anderson must avoid "concentrated exposure to dust, fumes, odors, chemical irritants and poor ventilation," and must avoid "even moderate exposure to extreme cold and heat."  *Id.*

The question before the Court is whether the ALJ erroneously used her lay judgment to assess the functional limitations caused by Anderson's Marfan's syndrome.  Although an RFC determination "is an issue reserved for the Commissioner," the ALJ is a layperson, and as such

is "not qualified to assess a claimant's RFC on the basis of bare medical findings." *Wilson v. Colvin*, No. 13-CV-6286, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015); *see also Tompkins v. Comm'r*, No. 17-CV-1042, 2019 WL 442452, at *4 (W.D.N.Y. Feb. 5, 2019) (remanding case where "the ALJ effectively rendered his own opinion from the medical data before him"). "In other words, an ALJ's ability to make inferences about the functional limitations that an impairment poses does not extend beyond that of an ordinary layperson. While an ALJ may render common sense judgments about functional capacity, she must avoid the temptation to play doctor." *Hayes v. Comm'r of Soc. Sec.*, No. 18-CV-963, 2020 WL 728271, at *3 (W.D.N.Y. Feb. 13, 2020) (internal quotation marks and brackets omitted).

In this case, the ALJ had before her two opinions related to Anderson's Marfan's syndrome. First was the opinion of treating medical provider Lynn Grucza, a nurse practitioner. She opined that she was "supportive" of Anderson's request for Social Security benefits, as he had "multiple medical issues, including Marfan's Syndrome which affects his heart and other organ systems." Tr. 458. She did not believe Anderson was able to work. Tr. 459. Grucza noted that the Marfan's syndrome caused muscle spasms and pain in Anderson's lower back, arms, and legs. *Id.* The ALJ afforded "little to no weight" to Grucza's opinion, noting that Grucza is not an acceptable medical source, and that her opinion lacks evidentiary support and is inconsistent with her treatment notes and the other medical evidence. Tr. 32-33; *see also Coger v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 427, 432 (W.D.N.Y. 2018) (stating that nurse practitioners are not considered "acceptable medical sources").

Consultative examiner Hongbiao Liu, M.D., provided the second opinion.  *See* Tr. 447-50.  After a consultative examination—which included a medical history and physical examination—Dr. Liu opined that Anderson had a "moderate limitation for prolonged walking, bending, and kneeling" and that he should avoid "dust and other irritating factors" due to his asthma.  Tr. 450.  The ALJ afforded partial weight to Dr. Liu's opinion, adopting his position on Anderson's asthma but rejecting his conclusion regarding prolonged walking, bending, and kneeling.  Tr. 33.  The ALJ found the latter limitation inconsistent with the "mostly normal examination findings" and too vague, as Dr. Liu used words like "moderate" and "prolonged" without "definitive explanation of each term."[1]  Tr. 33.

After weighing the opinion evidence, the ALJ concluded that Anderson could perform light work, which "requires standing or walking for six hours total in an eight-hour workday with intermittent sitting."  *Yildirim v. Comm'r of Soc. Sec.*, No. 18-CV-6098, 2019 WL 3074062, at *3 n.5 (W.D.N.Y. July 15, 2019).  The ALJ reached this conclusion in light of the "objective evidence," which included the results of Anderson's physical examinations and testing, his history of conservative treatment, the absence of prescribed ambulatory devices, and the absence of "any heart attacks or significant asthma" during the relevant period.  Tr. 33.  But the ALJ did limit Anderson to occasional postural activities, based on the Marfan's syndrome and Anderson's testimony regarding his joint and muscle pain.  Tr. 34.

---

[1] The Commissioner appears to argue that Dr. Liu's opinion is in fact consistent with the ALJ's RFC determination.  *See* ECF No. 11-1 at 7.  The Court need not address this argument, as it conflicts with the ALJ's own reasoning.  *See Crosse v. Colvin*, 73 F. Supp. 3d 169, 174 (N.D.N.Y. 2014) (noting that a reviewing court may not "accept appellate counsel's *post hoc* rationalizations for agency action").

The problem is that, having rejected the medical opinions insofar as they pertained to Anderson's Marfan's syndrome, the ALJ proceeded to find specific functional limitations based on her own review of the raw medical data, examination results, and treatment notes. *See* Tr. 31-34.  As discussed above, the ALJ is a layperson and is not qualified to translate complex medical findings into functional terms. *See, e.g.*, *Hayes*, 2020 WL 728271, at \*3.  For example, in assessing the functional limitations caused by the Marfan's syndrome, the ALJ cited the results of Anderson's 2015 cardiac testing and of his physical examinations. *See* Tr. 31, 32.  But the Court fails to discern the connection between, say, the fact that Anderson did not exhibit "spinal tenderness" or "extremity range of motion deficits" at examinations and the conclusion that he could walk and stand for six hours each workday despite his Marfan's syndrome.  Tr. 32.

To the Court, such a specific connection could only be made if one had a sufficient understanding of Marfan's syndrome, its symptoms, the manner in which it manifests—in other words, one would need a level of medical expertise the ALJ lacks. *Accord Judd v. Berryhill*, No. 17-CV-1188, 2018 WL 6321391, at \*7 (W.D.N.Y. Dec. 4, 2018) ("It is unclear to the Court how the ALJ, who is not a medical professional, determined the RFC without a medical source statement or consultative examination report to assist her in correlating the medical treatment notes into an assessment of Plaintiff's physical capacity for work-related activities."); *Brauer v. Comm'r of Soc. Sec.*, No. 17-CV-1288, 2019 WL 3074060, at \*5 (W.D.N.Y. July 15, 2019) ("[A] medical source's opinion would be necessary to translate the radiologic reports into an assessment of [the claimant's] functional capacity to stand, walk, sit, and lift.").  Because the

8

ALJ rejected the only medical opinions related to Anderson's Marfan's syndrome, the ALJ's evaluation of the disorder and the functional limitations resulting therefrom was the product of her lay judgment.  That error necessities remand for further proceedings.  *See Brauer*, 2019 WL 3074060, at *6.

On remand, the Commissioner may "employ one of the several methods available to ensure that there is a competent medical opinion in the record," including by "requesting additional information from a treating physician, obtaining another consultative examination, or requesting an opinion from a medical expert."  *Id.*  "This may help to avoid a situation in which the ALJ is left without guidance from a medical source" on the Marfan's syndrome and the functional limitations it causes.  *Id.*

## IV.   CONCLUSION

For the reasons discussed herein, the Court denies the Commissioner's motion (Dkt. No. 11) and grants Anderson's cross-motion (Dkt. No. 8).  The Court vacates the Commissioner's final decision and remands the matter for further proceedings consistent with this Decision and Order.  The Clerk of Court is directed to close the case.

SO ORDERED.

*/s/ Hugh B. Scott*
Hon. Hugh B. Scott
United States Magistrate Judge

DATED: September 17, 2020